**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZULMA J. R., | Case No.: 23-cv-01038 |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.   INTRODUCTION

Before the Court is the appeal of Zulma J. R.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA").  ECF No. 1; *see also* ECF No. 7 ("Pl. Br.").  The Commissioner opposed the appeal. ECF No. 15 ("Opp.").  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## II.   BACKGROUND

Plaintiff is 57 years old and has completed high school and one year of college.  ECF No. 4 ("Tr.") at 37, 86.  Before applying for DIB in June 2016, she worked several jobs:  as a site supervisor at Northrop Grumman, where she "did fingerprints for immigration;" as a patient

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases.  D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

representative at Stone Center of New Jersey, where she admitted patients and did data entry; and as a self-employed childcare provider, watching eight-year-old children after school and in the summer. *Id.* at 86–88. Plaintiff explained that she stopped working in May 2015 because of her conditions. *Id.* at 293. Plaintiff contends that, for the period of alleged disability, she was unable to work as a result of fibromyalgia, hypertension, diabetes, arthritis, anemia, asthma, recurring kidney stones, and chronic sleep apnea. *Id.*

### A.    Physical Treatment

Plaintiff has a longstanding history of various physical impairments. One impairment is a history of diffuse pain that providers consistently diagnosed as fibromyalgia. Throughout the relevant period, Plaintiff repeatedly reported widespread body aches involving her neck, back, shoulders, arms, hands, fingers, knees, hips, feet, and forearms, along with fatigue and morning stiffness. *Id*. at 458–59, 942, 947, 951. Rheumatologist Michael Guma, D.O., saw her regularly and concluded in May 2016 that her symptoms reflected a "fibromyalgia-type picture," rather than arthritis. *Id.* at 458. On examination, she frequently demonstrated diffuse tenderness, hypertrophic bony changes in the knees and hands, crepitus in both knees, and painful or limited range of motion in the shoulders and elbows, but without active synovitis, joint swelling, or neurological deficits. *Id*. at 682, 905, 920, 949. Imaging studies were generally benign or showed only mild degenerative changes. *Id*. at 599, 907, 1651. Dr. Guma also noted that Plaintiff had a history of anemia for which she received transfusions, but that she had not been taking her required iron supplements. *Id.* at 458.

Treatment included Cymbalta, Duloxetine, Gabapentin, Tramadol, Voltaren gel, Naproxen, and later Amitriptyline, with variable relief and reports of "good and bad days." *Id*. at 458, 474, 682–83, 902, 905, 916, 1637–38. Providers repeatedly emphasized weight loss as critical to symptom improvement, particularly as Plaintiff prepared for and ultimately underwent bariatric

surgery. *Id*. at 458, 683, 951. Despite significant weight loss after surgery, Plaintiff continued to report chronic fibromyalgia pain through 2017 and 2018. *Id*. at 902, 905, 916, 932.

Plaintiff also suffered from hypertension, and reported symptoms including chest tenderness, dull retrosternal pain, dizziness, palpitations, and episodes of syncope. *Id*. at 293, 657, 1676–1701, 1716–27, 1730–38. She visited the emergency department multiple times for chest pain and elevated blood pressure, though she was often discharged in stable condition after evaluation. *Id*. at 1676–1701, 1730–38.

In October 2016, cardiologist Frank Iacovone, M.D., evaluated Plaintiff and documented a mild I/VI holosystolic murmur on examination. *Id*. at 677. However, diagnostic testing, including EKG, Lexiscan stress testing, and echocardiography, was negative for ischemia or significant cardiac disease. *Id*. Dr. Iacovone initiated treatment with hydrochlorothiazide for intermittent leg swelling, aspirin, and Norvasc to prevent vasospasm. *Id.* Plaintiff remained on antihypertensive therapy thereafter. *Id*. at 782, 1869–70.

In 2018, further cardiac testing was performed after Plaintiff complained of shortness of breath, dizziness, and palpitations. *Id*. at 1046–51. An echocardiogram showed mild left atrial dilation and regurgitation of the mitral, pulmonary, and tricuspid valves. *Id*. at 1048. Plaintiff later returned to the emergency department in November 2018 with elevated blood pressure following kidney stone surgery. *Id.* at 1576–91. Pulmonologist Malcolm Hermele, M.D., assessed Plaintiff's hypertension as a permanent impairment. *Id.* at 805.

Plaintiff was also treated for diabetes throughout the relevant period. *Id.* at 293. In February 2016, she presented to Srinivasa Eswarapu, M.D., with elevated blood sugar, fatigue, and sleep disturbance. *Id*. at 478. At that time, she weighed over 250 pounds and had a BMI exceeding 50, though her physical examination was otherwise normal. *Id.* at 478. She was treated with Januvia and was advised regrading diet, exercise, and weight loss. *Id.* at 461, 474.

3

Subsequent visits in 2016 documented that Plaintiff's blood sugar levels were within range, she was compliant with her medications, and she was exercising regularly. *Id.* at 461. Dr. Hermele later opined that Plaintiff's diabetes constituted a permanent impairment. *Id.* at 805. Following bariatric surgery in November 2016 and substantial weight loss thereafter, Plaintiff continued to be monitored and treated for diabetes through the end of the relevant period. *Id.* at 782, 974.

Plaintiff also had a documented history of asthma with recurrent exacerbations. She presented to the emergency department multiple times in 2015 and 2016 for asthma symptoms and respiratory complaints, but was discharged in stable condition following treatment. *Id.* at 537–625. In April 2016, Plaintiff required nebulized Albuterol treatment, which resulted in mild improvement of her respiratory symptoms. *Id.* at 464. Asthma-related complaints and emergency visits continued through 2020. *Id.* at 1747–77.

Also during the relevant period, Plaintiff experienced recurrent kidney stones requiring repeated emergency department visits and invasive procedures. She presented numerous times beginning in 2015 and 2016 for flank pain and renal colic. *Id.* at 537–625. In November 2018, she underwent stent placement surgery for kidney stones. *Id.* at 1525–72. She returned to the emergency room shortly thereafter with flank pain and elevated blood pressure and was found to be passing another stone. *Id.* at 1575–91. In December 2018, Plaintiff underwent cystoscopy, ureteroscopy, laser lithotripsy, stone removal, and stent placement for a right ureteral stone. *Id.* at 1595–608. She returned later that month with flank pain and was diagnosed with a retained stent, urinary tract infection, and fever. *Id.* at 1611–16. Kidney stone-related emergency visits continued into 2020. *Id.* at 1976–89.

Lastly, Plaintiff complained throughout the relevant period of excessive daytime somnolence and chronic sleep disturbance, leading to evaluation for obstructive sleep apnea. In April 2016, Ahmad Yousaf, M.D., ordered a sleep study, which revealed severe obstructive sleep

apnea with moderate snoring. *Id.* at 647, 649. A CPAP titration was recommended and completed shortly thereafter. *Id.* at 651–53. Providers also emphasized weight loss and exercise as critical components of treatment. *Id.* at 647.

### B.     Mental Treatment

Plaintiff's record reflects a history of anxiety, depression, and post-traumatic stress disorder ("PTSD"). Plaintiff initiated psychiatric treatment on November 28, 2016, reporting anxiety symptoms present for more than five years, including depressed mood, excessive worry, insomnia, irritability, and panic. *Id.* at 826. She described family-related stressors, grief over the death of her grandson, and concern for her parents in Puerto Rico. *Id.* A mental status examination showed intact cognition and normal speech, with irritable mood and sad affect. *Id.* at 831. She was diagnosed with depression secondary to chronic pain and financial stressors, as well as panic disorder, and was treated with multiple medication trials due to limited response. *Id.* at 831–37.

Throughout 2017, Plaintiff continued psychiatric care and reported persistent anxiety, depressed mood, irritability, and sleep disturbance despite medication adjustments. *Id.* at 838–84. She described functional impact, including withdrawal from college courses due to difficulty attending and keeping up with coursework. *Id.* at 974. In October 2017, she began therapy and reported significant anxiety related to the anticipated release of her ex-son-in-law, who killed her son, as well as chronic insomnia. *Id.* at 987.

In 2018, Plaintiff's diagnoses expanded to include PTSD and insomnia. *Id.* at 998. In August 2018, she reported worsening depression and chronic pain, and examination findings included depressed mood, flat affect, poor eye contact, and passive suicidal ideation without intent. *Id.* at 1002. Psychiatric medication adjustments continued in response to symptom severity. *Id.* at 1003.

Plaintiff's PTSD, anxiety, and depressive symptoms persisted into 2019 and 2020. In

5

January 2019, she reported nightmares, poor sleep, and trauma related rumination. *Id.* at 1780–81.  Mental status examinations continued to show irritable or dysphoric mood with intact cognition and judgment.  *Id*. at 1799–1800.  In February 2020, Plaintiff reported worsening anxiety, depression, and insomnia, resulting in further medication changes.  *Id.* at 1826–27.

### C.    Consultative Examinations and State Agency Medical Expert Findings

On August 3, 2017, psychiatric nurse practitioner Mylene T. Alberto completed a Mental Residual Functional Capacity Questionnaire after treating Plaintiff monthly since November 10, 2016. *Id.* at 854.  She diagnosed major depressive disorder, PTSD, and panic disorder, and stated that Plaintiff's chronic pain and fibromyalgia exacerbated her mental symptoms and that she had a poor response to medication.  *Id.* at 844, 854.  NP Alberto assessed mostly mild to moderate limitations in understanding, remembering, and carrying out simple instructions, interacting with others, and making simple work-related decisions.  *Id.* at 857–58.  However, she found marked limitations in maintaining a schedule, regular attendance, and completing a normal workday and workweek without interruptions from psychological symptoms.  *Id.* at 857.  She also assessed marked limitation in Plaintiff's ability to tolerate normal work stress.  *Id.* at 858.  NP Alberto opined that Plaintiff would require unscheduled breaks every one to two hours, would miss more than four days of work per month, and had experienced three episodes of decompensation within a twelve-month period.  *Id.* at 858–59.

On October 4, 2019, Catherine C. Shalhoub, PA, completed a Mental Residual Functional Capacity Assessment.  *Id.* at 2351–54.  She diagnosed Plaintiff with PTSD, panic disorder, generalized anxiety disorder, major depressive disorder, and insomnia, and noted that fibromyalgia contributed to Plaintiff's depression and anxiety.  *Id.*  NP Shalhoub assessed no limitation in Plaintiff's ability to carry out very short and simple instructions or make simple work-related decisions, and mild to moderate limitations in other simple tasks, but extreme limitations in

understanding and remembering detailed instructions. *Id.* at 2352. She further opined that Plaintiff had marked to extreme limitations in attention, concentration, sustaining a routine without supervision, working near others, and completing a normal workday and workweek. *Id.* at 2352–53. NP Shalhoub concluded that Plaintiffs' mental impairments would substantially interfere with sustained work functioning approximately 20 percent of the time. *Id.* at 2354.

### D.    Procedural History

On June 24, 2016, Plaintiff filed an application for DIB, alleging disability as of May 7, 2015. *Id.* at 160–73. Plaintiff's claim was denied initially and upon reconsideration. *Id.* at 160–86, 187–94. The ALJ held a hearing on October 24, 2018, at which Plaintiff, represented by counsel, and a vocational expert, testified. *Id.* at 80–110. In a decision dated January 11, 2019, the ALJ found Plaintiff not disabled. *Id.* at 8–27. On October 16, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision final. *Id.* at 1–7. Plaintiff appealed to the United States District Court for the District of New Jersey. While awaiting a decision, Plaintiff filed claims for Title II and Title XVI benefits on May 28, 2020, and June 15, 2020, respectively. *Id.* at 1190. In an Opinion and Order dated April 29, 2021, United States District Court Judge Kevin McNulty of the District of New Jersey reversed and remanded the Commissioner's decision because the ALJ had not properly considered certain of Plaintiff's impairments, including her obesity. *Id.* at 1166–77.

As directed by Judge McNulty, the Appeals Council vacated the ALJ's January 2019 decision and instructed the ALJ to conduct further proceedings consistent with Judge McNulty's Opinion and Order. *Id.* at 1188–90. The Appeals Council instructed the ALJ to consolidate Plaintiff's original June 2016 claims with her new May 2020 and June 2020 claims and to issue a new decision on the consolidated claims. *Id.* at 1990. The ALJ held a new hearing on June 13, 2022. *Id.* at 1084–106. In a new decision dated November 10, 2022, the ALJ issued a "partially

7

favorable" opinion finding that Plaintiff became disabled beginning on October 1, 2020, and continued to be disabled through the date of the ALJ's decision, but that Plaintiff was not disabled prior to October 1, 2020. *Id.* at 1054, 1058. This appeal followed.

## III.    LEGAL STANDARD

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and corroborated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotation marks and citation omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (internal quotation marks and citation omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

**B.      Determining Disability**

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing."  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

**C.      Sequential Evaluation Process For A Continuing Disability**

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA.  20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  *Sykes*, 228 F.3d at 262.  Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work.  *Id.*  Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R.

Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four of this test. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2015, the alleged onset date. Tr. at 1060. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; fibromyalgia, right sciatica; hypertension; arthritis; sleep apnea; headaches; anxiety; depression; and PTSD. *Id*. At this step, the ALJ noted that these impairments were severe because they "significantly limit the ability to perform basic work activities as required by SSR 85-28." *Id*. At step three, the ALJ determined that Plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the Listings. *Id*. at 1060–62. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC for the period

10

prior to October 1, 2020. *Id.* at 1062–66. Based on all the evidence in the record, the ALJ assessed

an RFC prior to October 1, 2020 for:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she was able to: lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 6 hours; sit for 6 hours in an eight hour work day; and perform unlimited pushing and pulling within the weight restriction given. The claimant was able to use ladders, ropes, scaffolds, ramps and/or stairs on an occasional basis. She was able to perform occasional balancing, stooping, kneeling, crouching, but no crawling. The claimant was able to perform jobs that required no exposure to unprotected heights, hazards or dangerous machinery. As to the mental requirements of work, the claimant was able to perform jobs: that were simple and repetitive; that required only an occasional change in work setting; and that required only occasional contact with co-workers and supervisors.

*Id.* at 1062. At step four, the ALJ determined Plaintiff is unable to perform any past relevant work.

*Id.* at 1067–68. At step five, based on the testimony of a vocational expert, Plaintiff's age,

education and work experience, and RFC, the ALJ determined there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform. *Id.* at 1068–69.

Accordingly, the ALJ found Plaintiff was not disabled during the relevant period. *Id.* at 1070.

### B.      Plaintiff's Arguments on Appeal

Plaintiff urges the Court to reverse the Commissioner's final administrative decision or, in

the alternative, vacate and remand the ALJ's decision for further administrative proceedings. First,

Plaintiff argues that the ALJ did not properly consider obesity at each step of the sequential

evaluation. Second, Plaintiff asserts that the ALJ's decision lacks the medical equivalence

discussion required by step three. Third, Plaintiff argues that the ALJ fails to provide a rationale

for the RFC, and that her evaluation of Plaintiff's symptoms is insufficient. The Court addresses

each argument in turn.

### 1.      The ALJ's Assessment of Plaintiff's Obesity

Plaintiff first argues that the ALJ did not effectively consider Plaintiff's obesity at each

step of the evaluation. ALJs are required to "meaningfully consider the effect of a claimant's

obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In assessing the impact of a plaintiff's obesity, the ALJ must discuss the evidence and explain his reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.*

Here, the Court finds that the ALJ adequately considered Plaintiff's obesity at each required step. After determining that Plaintiff's obesity was a severe impairment at step two, the ALJ found that Plaintiff's impairments, either considered alone or *in combination*, did not equal the severity of an impairment in the Listings. Tr. at 1060. The ALJ explained:

> It is noteworthy that although there is no specific medical listing regarding obesity, the undersigned has evaluated the impairment herein pursuant to the extensive and detailed guidelines set forth in SSR 19-2p. While the claimant's obesity does not increase the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing, the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the work environment is given consideration in the claimant's residual functional capacity.

*Id.* at 1062. The ALJ stated that she "evaluated the impairment" of obesity in accordance with the relevant guidelines and concluded that Plaintiff's obesity, combined with other impairments, does not medically equal a Listing. *Id.* Accordingly, this Court finds that the ALJ appropriately considered Plaintiff's obesity as part of the medical equivalency analysis at step three. *See Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) (noting that when an ALJ explicitly states that he has considered the impairments in combination, and it is clear from his analysis he has sufficiently probed the record, "[w]e see no reason not to believe him"); *Gainey v. Astrue*, No. 10-1912, 2011 WL 1560865, at *12 (D.N.J. Apr. 25, 2011) ("[W]here the ALJ has indicated that the impairments have been considered in combination, there is 'no reason not to believe' that the ALJ did so.").

The ALJ then properly considered obesity in her construction of the RFC.  Tr. at 1062–67. In the ALJ's analysis of the evidence, she referenced Plaintiff's BMI measurements, *id.* at 1063–64, 1066, her significant weight loss and subsequent weight gain, *id*. at 1063, and her doctor's weight loss recommendation, *id.*  The ALJ concluded:

> With regard to the remand order and the claimant's obesity, there is no indication in the record that her weight seriously limited her functioning and no medical source opined as much, even when her BMI was in the 50's.  At the consultative examination in 2016, she weighed 255 pounds and was 60 inches in height. (8F). The examiner found her to be "slightly obese" and found only mild restricted range of motion in the shoulder and knee.  In August 2017, her BMI was 35.93. (28F). Progress notes from Riverside Rheumatology report a BMI of 36.36 in 2018, with complaints of pain being attributed to fibromyalgia. (31F).  Notably, the claimant was able to live independently even at the time of the hearing in June of 2022 (as her daughter had moved to Florida) and the Function Reports in the record do not show any substantial reported decrease in her activities of daily living until in or about the middle of 2020 (compare e.g. Exhibits 3E, 4E and 8E with 25E).  Other reference[s] regarding the claimant's BMI are noted above.

*Id.* at 1066.  The ALJ also considered Plaintiff's obesity together with other symptoms, noting that she looked at "all symptoms," *id*. at 1062, specifically addressing Plaintiff's other physical limitations, including knee and back pain—areas where obesity is most likely to compound, *id.* at 1063–64.

The ALJ's specific consideration of obesity in the context of these physical findings, in addition to a thorough discussion of the medical evidence, satisfied her obligation to "meaningfully consider the effect of a claimant's obesity" in the context of constructing the RFC.  *Diaz*, 577 F.3d at 504; *see also Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) ("Here, the ALJ explicitly contemplated [claimant's] obesity at the appropriate step . . . . Accordingly, [claimant's] argument fails.").  Therefore, remand is not required on this basis.

### 2.    The ALJ's Step 3 Medical Equivalence Discussion

Plaintiff next contends that the ALJ failed to consider the combined effect of Plaintiff's impairments at step three.  At step three, the ALJ must determine "whether a claimant's

impairment or combination of impairments meets, or medically equals, the criteria of [a Listing]." *Diaz*, 577 F.3d at 502. The ALJ must "set forth the reasons for [her] decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). It is not enough for the ALJ to explain why Plaintiff's impairments do not meet a Listing "*individually*;" the ALJ must also "consider [Plaintiff's] impairments *in combination* when determining medical equivalence." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151–52 (3d Cir. 2008) (emphasis added). However, when an ALJ's decision, "read as a whole," sufficiently supports a finding, the ALJ does not need to repeat every fact and symptom at step three. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Morrison*, 268 F. App'x at 189 (noting that when an ALJ explicitly states that he has considered the impairments in combination, and it is clear from his analysis he has sufficiently probed the record, "[w]e see no reason not to believe him").

On harmless error review, the plaintiff bears the burden to "explain [ ] . . . how the ... error to which he points could have made any difference." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396 (2009)).

### i.    Physical Impairments

For Plaintiff's physical impairments, the ALJ considered Listings 1.02 (the old listing for joint dysfunction), 1.18 (the updated listing for joint dysfunction), and 7.05 (hemolytic anemias), finding that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity" of these Listings. Tr. at 1060–61. Plaintiff argues that several severe impairments recognized by the ALJ at step two were not mentioned, and thus not considered, at step three. Pl. Br. at 27–28. Plaintiff also argues that the ALJ did not consider obesity and anemia in combination with other impairments. *Id.* at 27.

However, Plaintiff "does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not," which is fatal to her appeal. *Holloman*

*v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).  The Third Circuit addressed a similar situation in *Holloman*, where the plaintiff likewise failed to explain how his impairments could have met or equaled specific listings.  The court held that "[e]ven if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to Holloman's claim."  *Id.*  The court explained that on harmless error review, which applies to administrative appeals, "the appellant bears the burden to demonstrate harm," and therefore must "explain [ ] . . . how the . . . error to which he points could have made any difference."  *Id.* (citing *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009)).  On this ground, the Third Circuit affirmed the District Court's denial of Holloman's appeal.

Like in *Holloman*, Plaintiff here "offers no answer" to the question of "how [she] might have prevailed at step three if the ALJ's analysis had been more thorough," giving the Court "no basis . . . to remand the case to the ALJ."  *Id.* (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).  Plaintiff offers no analysis of how the evidence supports a finding of a qualifying disability at step three, arguing only that the ALJ failed to adequately consider the evidence.  *See* ECF No. 18 at 3.  As the Third Circuit and numerous courts in this district have held, this does not meet a plaintiff's burden of demonstrating harmful error on appeal.  *See Holloman*, 639 F. App'x at 814; *Thomas v. Comm'r of Soc. Sec.*, No. 19-13990, 2021 WL 870745, at *8 (D.N.J. Mar. 8, 2021) (denying appeal where plaintiff, despite having multiple opportunities, failed to "explain how he 'might have prevailed at step three if the ALJ's analysis ha[d] been more thorough"); *Farmer v. Comm'r of Soc. Sec.*, No. 19-13437, 2020 WL 6620152, at *3 (D.N.J. Nov. 12, 2020) (denying appeal where "Plaintiff did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for any Listing").  Therefore, remand based on this portion of Plaintiff's appeal is not appropriate.

### ii.        Mental Impairments

For Plaintiff's mental impairments, the ALJ considered Listings 12.04 (affective disorders), 12.06 (anxiety disorder), and 12.15 (trauma and stressor-related disorders).  To satisfy step three for these mental impairments, the claimant must meet either: (1) the requirements of paragraph A and the requirements of paragraph B; or (2) the requirements of paragraph A and the requirements of paragraph C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2).  Plaintiff takes issue with the ALJ's conclusions regarding paragraphs B and C.

Paragraph B requires that the claimant's impairment result in an "extreme" limitation of one, or "marked" limitation of two, of the following four areas of mental functioning:  (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (3) "adapt or manage oneself."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Plaintiff argues that the ALJ considered criteria that was not relevant to the criteria listed in paragraph B, particularly Plaintiff's abilities to concentrate, persist, or maintain pace, interact with others, and adapt or manage herself.  Pl. Br. at 28–33.  The Court disagrees.

In evaluating Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ considered the following:

> [T]he claimant reported no need for special reminders, and reported an ability to pay bills, count change, handle a savings account and use a checkbook. (8E). At the initial psychological consultative examination, the claimant was able to spell "world" forwards but she could not spell "world" backwards. She completed one step of serial sevens before making an error and was able to read and comprehend the one stage command "raise your right hand." (59F). At a subsequent consultative examination, her insight and judgment were noted to be fair. At that consultation examination, she could not perform serial 7's after multiple attempts.

Tr. at 1061.  Plaintiff complains that "[n]o consideration is given to any work related abilities or limitations."  Pl. Br. at 31.  But Plaintiff's argument is unavailing.  The ALJ evaluated Plaintiff's mental functioning based on the evidence in the record.  *Adrienne L. v. O'Malley*, No. 21-20492, 2024 WL 208963, at *13 (D.N.J. Jan. 19, 2024) ("It was also proper for the ALJ to consider other

16

record evidence, including Plaintiff's daily life activities, when analyzing Dr. Brown's findings and the extent of Plaintiff's mental impairments."). Plaintiff's mental functioning outside of the workplace can be used as evidence of her ability to function in a work setting. *James R. v. Kijakazi*, No. 22-05030, 2023 WL 6389097, at *8 n.12 (D.N.J. Sept. 30, 2023) ("Information about [their] daily functioning can help us understand whether [their] mental disorder limits one or more of these areas [of mental functioning]; and, if so, whether it also affects [their] ability to function in a work setting." (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(F)(3)(b))). Further, Plaintiff fails to identify any additional evidence in the record that would support a different finding.

Plaintiff makes a similar argument with respect to the ALJ's finding for Plaintiff's ability to interact with others. The ALJ considered evidence available in the record that involved social interaction, including shopping in stores, leaving her home, attending doctor's appointments, and a psychological examination that showed her speech and eye contact were normal. Tr. at 1061. Plaintiff argues that "these factors have nothing to do with the ability to function in supervised and competitive employment," but points to no other evidence in the record that would be more relevant to Plaintiff's ability to interact with others. Therefore, it was rational for the ALJ to consider the evidence available to her in finding a mild limitation here.

Lastly, Plaintiff contends that the ALJ erred by finding a mild limitation in Plaintiff's ability to adapt or manage oneself because Plaintiff had "a disheveled appearance" and reported that she avoids crowded stores and public transportation. Pl. Br. at 32–33. But other evidence considered by the ALJ counterweighs those facts. The ALJ considered that in her self-function report, the claimant reported that her functional difficulties were due to her physical impairments, not her mental impairments. Tr. at 1061; *see also id.* at 347–54. Plaintiff's daughter's third-party function report similarly omitted any mention of mental impairments. Tr. at 1061; *see also id.* at 322–29. Furthermore, other medical records described Plaintiff as "dressed appropriately," *id.* at

17

1869 and "casually dressed" on multiple occasions. *Id.* at 1785, 1792, 1799, 1808. The ALJ also considered that Plaintiff was able to shop in stores, go outside her home alone, and attend her doctor appointments. *Id.* at 1061. Additionally, Plaintiff's daughter reported that Plaintiff was able to bathe herself, prepare dinner, and clean and tidy her home. *Id.* at 322, 324. Therefore, the ALJ's finding of a mild limitation in Plaintiff's ability to adapt or manage oneself was rationally based on the evidence in the record.

Plaintiff also takes issue with the ALJ's determination that paragraph C criteria were not satisfied. Paragraph C is satisfied by medical documentation showing that "the mental disorder is 'serious and persistent,' indicated by a history of the disorder over a period of at least 2 years and evidence of both (1.) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder, and (2.) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already a part of the claimant's daily life." *A.E. v. Comm'r of Soc. Sec.*, No. 20-11492, 2021 WL 5905704, at *4 (D.N.J. Dec. 14, 2021).

Plaintiff does not explain what evidence supports a finding that her mental disorders were "serious and persistent" or otherwise satisfy the requirements of paragraph C. The ALJ, on the other hand, discussed Plaintiff's mental health record and its effects on her capacity at length throughout her decision. Given that Plaintiff has the burden to prove that the ALJ's error caused harm, and that the ALJ discussed Plaintiff's mental conditions at length, remand is not appropriate on this basis.

### 3.   The ALJ's RFC Assessment

Lastly, Plaintiff argues that the ALJ did not adequately explain his assessment of Plaintiff's RFC. Pl. Br. at 37–54. The responsibility for assessing and assigning a claimant's RFC rests solely with the ALJ, not with any particular medical source. 20 C.F.R. §§ 404.1527(d)(2)–(3),

18

404.1546(c); *see also Chandler,* 667 F.3d at 361.  The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the plaintiff's RFC.  20 C.F.R. § 404.1545(a)(3).  Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Here, the ALJ conducted a thorough review of the relevant evidence and explained how she arrived at the RFC.  Specifically, the ALJ considered Plaintiff's testimony, the extensive medical record, and medical opinion evidence.  Tr. at 1063–66.  The ALJ speifically considered Plaintiff's testimony concerning the various difficulties she faces as a result of her physical and mental symptoms.  *Id.* at 1063, 1065.  The ALJ determined that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to October 1, 2020." *Id.* at 1063.  The ALJ also discussed at length the evidence contained in dozens of medical exhibits regarding Plaintiff's physical and mental impairments.  *Id.* at 1063–65.  Finally, the ALJ examined medical opinion evidence and compared it to Plaintiff's testimony and the medical evidence to determine its validity.  *Id.* at 1065–66.  The ALJ found that the medical and opinion evidence "indicate that her symptoms do not preclude all work activity." *Id.* at 1066–67.

Plaintiff's arguments that the ALJ's analysis was insufficient are unavailing.  Plaintiff first contends that that the decision contains no explanation of the RFC findings that she can stand and walk six-to-eight hours per day, climb ladders, ropes, scaffold, ramps and stairs one-third of every workday, and lift/carry ten-to-twenty pounds throughout the workday.  Plaintiff also argues that the ALJ did not sufficiently consider Plaintiff's complaints of pain.  These assertions are incorrect.  The ALJ considered Plaintiff's testimony regarding her difficulties accomplishing physical tasks, as well as her numerous self-reports to providers regarding her pain, but ultimately found that the

medical record did not fully support her reports of the intensity, persistence, and limiting effects of these symptoms. *Id.* at 1063. The ALJ then provided a lengthy analysis of the evidence that led her to this conclusion, including providers' perceptions of her ability to accomplish physical activities, physical examinations, and the opinions of medical consultants regarding her exertional capabilities. *Id.* at 1063–66. Upon review of the decision, the Court finds that the ALJ did, in fact, provide a lengthy explanation of her findings regarding Plaintiff's physical RFC, and sufficiently considered Plaintiff's self-reports of pain.

Plaintiff further argues the decision contains no explanation of the RFC findings that she can sustain "simple and repetitive" jobs that require "only an occasional change in work setting; and that require[] only occasional contact with co-workers and supervisors." But the ALJ clearly justifies her finding by considering evidence such as: (1) NP Alberto's description of claimant's mental health symptoms as "moderate" and generally aggravated by family issues; (2) numerous mental status examinations yielding findings "within normal limits, including retaining normal associations, normal insight and judgment, full orientation, intact memory, and intact attention span and concentration;" (3) mental status examinations showing "no motor abnormalities or muscle rigidity, linear and logical thought process, good insight and judgment, and grossly intact memory and cognition;" (4) medical consultants reports that Plaintiff's mental allegations are nonsevere; and (5) self-reports that Plaintiff is able to handle both stress and changes in routine in an "okay" manner. *Id.* at 1063–67. For these reasons, the ALJ's RFC finding regarding Plaintiff's mental impairments was rational.

## V.    **CONCLUSION**

For the reasons discussed in this Opinion, the Court finds that the conclusions reached by the ALJ were rational and corroborated by substantial evidence, and neither remand nor reversal are warranted.

**Accordingly**, **IT IS** on this 25th day of March, 2026,

**ORDERED** that Plaintiff's appeal (ECF Nos. 1, 7) is **DENIED**; and it is further

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED**.

**SO ORDERED**.

*s/ Claire C. Cecchi*

**CLAIRE C. CECCHI, U.S.D.J.**